FILED
United States Court of Appeals
Tenth Circuit

PUBLISH

November 10, 2015

UNITED STATES COURT OF APPEALS

Elisabeth A. Shumaker
Clerk of Court

FOR THE TENTH CIRCUIT

VLADIMIR BORISOV VLADIMIROV,

Petitioner,

v.

No. 13-9595

LORETTA E. LYNCH,
United States Attorney General,[*]

Respondent.

## ON PETITION FOR REVIEW FROM
## THE BOARD OF IMMIGRATION APPEALS

Submitted on the briefs:[**]

Nicolette Glazer, Law Offices of Larry R. Glazer, Century City, California, for Petitioner.

Stuart F. Delery, Assistant Attorney General, Paul Fiorino, Senior Litigation Counsel, Rebekah Nahas, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

---

[*]    In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Loretta E. Lynch is substituted for Eric H. Holder, Jr., as the respondent in this action.

[**]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Vladimir Vladimirov, a native of Bulgaria, seeks review of a Board of Immigration Appeals' (BIA) order of removal based on marriage fraud. The BIA determined Vladimirov had sought to procure immigration benefits by fraud or willful misrepresentation of a material fact, i.e., his sham marriage. *See* 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A). Much of the government's evidence came from written reports prepared by immigration officers and other written materials contained in the agency's files. Vladimirov claims the BIA's reliance on such materials denied him due process of law and without the disputed evidence the government failed to make its case. Our resolution of this matter requires us to examine the process due in immigration cases, particularly as it applies to the consideration of evidence that might be excluded in other contexts. We deny the petition for review.

## I. BACKGROUND

Vladimirov entered the United States in February of 1996 as a nonimmigrant visitor authorized to stay until August of 1996, but he did not depart. In July of 2005, he married Valentina Bakhrakh, a United States citizen. Bakhrakh filed an I-130 petition for alien relative to assist her husband Vladimirov to adjust his

immigration status. Based on the I-130 petition, Vladimirov filed an I-485 application to adjust status.

Shelly Randall, an officer with the United States Citizenship and Immigration Services (USCIS) interviewed Vladimirov and Bakhrakh on March 6, 2006, and May 17, 2006, to ascertain the bona fides of the marriage. During the May 17 interview, Vladimirov and Bakhrakh gave conflicting statements under oath regarding their address, how long they had lived at the address, the number of bedrooms and bathrooms it contained, how Vladimirov had proposed marriage to Bakhrakh, what type of ring he presented, how and when they celebrated the wedding, when they moved in together, their morning routine on the day of the interview, and what they did the previous Sunday.

Based on those discrepancies, Officer Randall requested a site visit, which was conducted on April 16, 2008, by USCIS Officer Janet Gibson. While at Vladimirov's home, Officer Gibson inquired about various personal items she observed in the home. Vladimirov admitted they belonged to his former wife, rather than to Bakhrakh. He also admitted he and Bakhrakh did not have a valid marriage and he had lied to make it appear they did.

The next day, Officer Gibson met with Bakhrakh and her son to discuss the evidence indicating the marriage was a sham and to explain the consequences of filing a fraudulent I-130 petition for alien relative. At the conclusion of the meeting, Bakhrakh withdrew the I-130 petition. Based on the withdrawal and the evidence contradicting a bona fide marriage, Officer Randall denied Vladimirov's I-485

3

application to adjust status.  A Notice to Appear (NTA) was then issued to Vladimirov, alleging he had "entered into a sham marriage with Valentina Bakhrakh in order to obtain lawful permanent resident status."  Admin. R. at 425. According to the NTA Vladimirov had sought to procure immigration benefits "by fraud or by willfully misrepresenting a material fact, to wit:  You filed an Application to Register Permanent Residence or Adjust Status (Form I-485) based upon a Petition for Alien Relative (Form I-130) filed on your behalf by Valentina Bakhrakh, based upon your sham marriage." *Id.*

Vladimirov requested a hearing before an immigration judge (IJ).  At the hearing, the government presented the testimony of Officer Randall, who read from the agency file and provided information from Officer Gibson's official reports. Bakhrakh also testified, claiming she was threatened and coerced into withdrawing the I-130 petition for alien relative.  Vladimirov did not testify.

The IJ determined the government had met its burden to establish removability based on marriage fraud and entered an order removing Vladimirov to Bulgaria.[1] Vladimirov's appeal to the BIA was dismissed.

---

[1] The IJ also found Vladimirov removable for having remained in the United States without authorization and for not being in possession of a valid visa. Vladimirov did not challenge these grounds in his appeal to the BIA or raise them in his briefs to this court.  Consequently, they are waived. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007) ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."); *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

4

Vladimirov now appeals for relief from this court arguing he was not given notice of the conduct forming the basis of the charges of fraud or material misrepresentation, and the government's evidence was insufficient to prove those charges. He further claims to have been denied due process in the administrative proceedings.

## II. STANDARDS OF REVIEW

We conduct a de novo review of purely legal questions. *Fernandez-Vargas v. Ashcroft*, 394 F.3d 881, 884 (10th Cir. 2005), *aff'd*, 548 U.S. 30 (2006). The government "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is [removable]." 8 U.S.C. § 1229a(c)(3)(A).

When reviewing a challenge to the quality and substantiality of the evidence, "[a] court 'does not ask itself whether it believes that the evidence' establishes removability by clear and convincing evidence, but rather whether the agency's 'judgment is supported by substantial evidence.'" *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1298 (10th Cir. 2011) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). In other words, we look for substantial evidence indicating the government met its affirmative burden to establish through clear and convincing evidence the alien was removable. *Jimenez-Guzman*, 642 F.3d at 1299. If the record reveals such evidence our review is concluded. "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr v. Gonzales*, 474 F.3d 783, 788-89 (10th Cir. 2007) (internal

5

quotation marks omitted). We neither reweigh the evidence nor assess witness credibility. *Id.* at 789.

The BIA issued a single-member decision. Therefore, "although we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Maatougui v. Holder*, 738 F.3d 1230, 1237 n.2 (10th Cir. 2013) (internal quotation marks, brackets and ellipsis omitted).

## III. DISCUSSION

### A. Notice

Vladimirov claims he was not informed of the basis for the charges of fraud or willful misrepresentation and therefore did not have fair notice of them.

The NTA clearly charged him with entering into a sham marriage with Bakhrakh, and further charged him with fraud and willful misrepresentation for filing an I-485 application to adjust status based on the sham marriage. The charge of marriage fraud was based on the fraudulent and willful misrepresentation Vladimirov was in a bona fide marriage with a United States citizen, a material fact. This provided a basis for removability. *See Surganova v. Holder*, 612 F.3d 901, 902, 904 (7th Cir. 2010) (affirming removal order on the ground alien "had procured the adjustment in her immigration status through marriage fraud" (citing 8 U.S.C. §§ 1182(a)(6)(C)(i) & 1227(a)(1)(A))); *Abdulahad v. Holder*, 581 F.3d 290, 295 (6th Cir. 2009) (stating aliens removable for marriage fraud under § 1227(a)(1)(A) include those who committed fraud or willful misrepresentation referred to in

6

§ 1182(a)(6)(C)(i)).  The NTA gave Vladimirov adequate notice of the "acts or conduct alleged to be in violation of law" and the charges against him.  8 U.S.C. § 1229(a)(1); 8 C.F.R. § 1003.15(b).

## B.  Substantial Evidence

We also reject Vladimirov's challenges based on the sufficiency of the evidence.  The fundamental question in assessing whether a couple entered into a good-faith marriage in this context is whether they "intended to establish a life together at the time they were married."  *Ibrahimi v. Holder*, 566 F.3d 758, 764-65 (8th Cir. 2009) (internal quotation marks omitted) (collecting cases).  Evidence of the parties' commitment to the marriage may include documentation of their finances and cohabitation, as well as birth certificates of any children born to the marriage and other evidence considered pertinent.  *See id.* at 765; 8 C.F.R. § 1216.5(e)(2).

Vladimirov wants our independent assessment of the evidence.  He claims it was insufficient to support a finding of marriage fraud because the couple's statements about their life together did not conflict.[2]  But "it is not our prerogative to reweigh the evidence."  *Neri-Garcia v. Holder*, 696 F.3d 1003, 1009 (10th Cir. 2012) (internal quotation marks omitted).  Substantial evidence in the record supports the BIA's finding that the couple's discrepant testimony about their life together

---

[2]    Vladimirov argues his statements made during the site visit were not misrepresentations so they could not support the charge of making a willful misrepresentation.  But the operative material misrepresentation was his assertion that he had entered into a bona fide marriage which entitled him to immigration benefits.

7

indicated they were not in a valid marriage. This evidence, together with Vladimirov's admission to the invalidity of the marriage and Bakhrakh's withdrawal of the I-130 petition for alien relative, was sufficient to meet the government's burden.

He also argues the government failed to show the marriage was a sham at its inception, rather than later, relying on statements he and Bakhrakh made claiming the marriage "was real," Admin. R. at 221. But in light of the evidence to the contrary, the trier of fact did not err in discounting those statements, and we will not reassess credibility determinations, *see Sarr*, 474 F.3d at 789.

Finally he tells us the evidence was insufficient to prove fraud or willful misrepresentation. But by signing the I-485 application to adjust status based on his sham marriage to a United States citizen, he attested to information he knew to be false in order to obtain immigration benefits.

Substantial evidence supports the BIA's conclusion that the government established by clear and convincing evidence Vladimirov had engaged in fraud and willful misrepresentation.

## C. Due Process

Vladimirov apparently thinks immigration procedures must approximate constitutional protections afforded criminal defendants. We have reached a different conclusion, saying "[r]emoval proceedings are civil in nature, and the extensive constitutional safeguards attending criminal proceedings do not apply," *Schroeck v. Gonzales*, 429 F.3d 947, 951 (10th Cir. 2005). Ultimately the question is what

8

process (in admitting and considering evidence) is due in this context. The answer is enough to insure a fair and reliable result.

Vladimirov contends the agency violated his due process rights in four ways. First, he was not afforded an opportunity to cross-examine Officer Gibson. Second, the agency improperly admitted and considered the Form I-213 denying his I-485 application to adjust status because it contained "triple hearsay," to wit: Officer Randall's testimony described reports filed by Officer Gibson, which in turn related Vladimirov's admission the marriage was a sham and Bakhrakh's withdrawal of the I-130 petition for alien relative. Third, the information contained in the Form I-213 denying his I-485 application could not be presumed to be reliable. Fourth, evidence of Bakhrakh's withdrawal of the I-130 petition should have been suppressed because Officer Gibson threatened and coerced her.

"[T]he Due Process Clause protects an alien subject to a final order of [removal], though the nature of that protection may vary depending upon status and circumstance." *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). "[W]hen facing removal, aliens are entitled only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." *Schroeck*, 429 F.3d at 952 (internal quotation marks omitted). An alien in removal proceedings "shall have a reasonable opportunity to examine the evidence against [him], to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government." *Barrera-Quintero v. Holder*, 699 F.3d 1239, 1248

9

(10th Cir. 2012) (internal quotation marks omitted); *see also* 8 U.S.C. § 1229a(b)(4)(B).

The right to cross-examine is not absolute, however. Where the alien has an opportunity to challenge the testimony and where the absence of the witness from the hearing "was legitimate and not contrived," the "alien must establish not only error, but prejudice." *Barrera-Quintero*, 699 F.3d at 1249 (internal quotation marks omitted). In *Barrera-Quintero*, the witness testified by telephone while here, Officer Gibson did not testify at all. Rather, her "testimony" came from an official public record created in the regular course of USCIS proceedings. *See Renteria-Gonzalez v. INS*, 322 F.3d 804, 817 n.16 (5th Cir. 2002) (observing that even if the Fed. R. Evid. applied, Form I-213 would "come within the public records exception to the hearsay rule"). The agent who created the report "cannot be presumed to be an unfriendly witness or other than an accurate recorder." *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009) (internal quotation marks omitted). And the report contained not only her observations but statements made by Vladimirov.

"'Establishing an automatic right to cross-examine the preparers of such documents would place an unwarranted burden on the [government].'" *Id.* (quoting *Espinoza v. INS*, 45 F.3d 308, 311 (9th Cir. 1995)). Vladimirov contends the "government must make a reasonable effort . . . to afford the alien a reasonable opportunity to confront the witnesses against him or her," *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005) (internal quotation marks omitted). But he has cited no Tenth Circuit authority for such a rule. And we note that in

10

*Hernandez-Guadarrama*, the witness was not a government agent, but an illegal alien who "was not, by any means, a disinterested witness." *Id.* at 682. Vladimirov's other authorities cited for the proposition that an affidavit is disallowed unless the government shows it could not procure a witness's appearance at the hearing are inapposite. In those cases, the respective courts deemed the documents and non-testifying witnesses to be unreliable. *See Pouhova v. Holder*, 726 F.3d 1007, 1012-15 (7th Cir. 2013) (rejecting government's proffered documents as unreliable because one statement was taken in English without an interpreter and the other (a Form I-213) was written seven years after the conversation it purported to report); *Hassan v. Holder*, 604 F.3d 915, 925-28 (6th Cir. 2010) (assuming foreign embassy documents containing hearsay statements were admissible but holding the documents were not reliable; the absence of a crucial document should have been construed against the government as the party with the burden of proof); *Banat v. Holder*, 557 F.3d 886, 890-93 (8th Cir. 2009) (stating although the Fed. R. Evid. are not controlling, the alien's due process rights were abridged by the IJ's reliance on a State Department document stating a letter produced by the alien was fabricated); *cf. Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010) (granting petition based on IJ's refusal to comply with alien's request to subpoena her husband to challenge his statements indicating marriage fraud); *Rosendo-Ramirez v. INS*, 32 F.3d 1085, 1086, 1088-89 (7th Cir. 1994) (holding Form I-213 was admissible at the hearing where the authoring border patrol agent testified).

Officer Gibson's absence from the hearing was legitimate and not contrived. Her observations were duly reported, as required. They are not per se inadmissible, but better contrary evidence might have carried the day. The same is true of her reports of Vladimirov's statements. He chose not to testify, relinquishing a clear opportunity to have explained the statements he made to Officer Gibson or denied making them. Again, other evidence might ultimately be more persuasive, but imperfect evidence may still inform the debate. And forgoing an opportunity to "set things right" may serve to enhance less than perfect proofs.

Evidence is admissible in a removal hearing as long as it "is probative and . . . its use is fundamentally fair." *Bauge v. INS*, 7 F.3d 1540, 1543 (10th Cir. 1993). The other circuits also apply these precepts to immigration proceedings. *See Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015); *Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008); *Fei Yan Zhu v. Attorney Gen. U.S.*, 744 F.3d 268, 273 (3rd Cir. 2014); *Djadjou v. Holder*, 662 F.3d 265, 276-78 (4th Cir. 2011); *Renteria-Gonzalez*, 322 F.3d at 817; *Alexandrov v. Gonzales*, 442 F.3d 395, 404 (6th Cir. 2006); *N.L.A. v. Holder*, 744 F.3d 425, 436 (7th Cir. 2014); *Kim v. Holder*, 560 F.3d 833, 836 (8th Cir. 2009); *Indrawati v. U.S. Attorney Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015); *cf. Hernandez-Guadarrama*, 394 F.3d at 681 (stating the test for admissibility of an affidavit "is whether the statement is probative and whether its admission was fundamentally fair. Thus, we require that the government must make a reasonable effort . . . to afford the alien a reasonable opportunity to confront the witnesses against him or her" (internal quotation marks omitted)).

12

"[Al]though the hearsay nature of evidence certainly affects the weight it is accorded, it does not affect its admissibility in immigration removal proceedings." *Dia v. Ashcroft*, 353 F.3d 228, 254 (3d Cir. 2003) (en banc) (brackets and internal quotation marks omitted). Where hearsay evidence is "seemingly reliable," it should not be rejected solely because it is hearsay. *Id.* Here, Officer Gibson's evidence was probative and there is no indication that its use was fundamentally unfair.

Vladimirov next asserts the agency improperly received and relied on the Form I-213 denying his I-485 application to adjust status. He claims the evidence was inadmissible because it contained unreliable "triple hearsay." "[E]videntiary rules are not strictly applied at immigration hearings." *Bauge*, 7 F.3d at 1543. "Hearsay is regularly used in administrative adjudication, and for that matter criminal sentencing. [The Supreme Court has] rejected the argument that the due process clause creates for administrative adjudication the same constitutional requirement of live testimony that the confrontation clause establishes for criminal trials." *Malave*, 610 F.3d at 487 (citing *Richardson v. Perales*, 402 U.S. 389, 402 (1971)).

Vladimirov further objected to the Form I-213 denial of his I-485 application because it was prepared in anticipation of litigation so was not entitled to a presumption of reliability.[3] "Form I-213 is a presumptively reliable administrative

---

[3] Vladimirov characterizes the presumption as an "absolute presumption" or an irrebuttable presumption. Aplt. Opening Br. at 31, 32. We need not address this argument because there is no indication the BIA treated it as an irrebuttable presumption. Indeed, the BIA considered Bakhrakh's testimony explaining why she

(continued)

13

document." *Gutierrez-Berdin v. Holder*, 618 F.3d 647, 653 (7th Cir. 2010); *accord Maldonado v. Holder*, 763 F.3d 155, 158 n.1 (2d Cir. 2014); *Espinoza*, 45 F.3d at 310-11. Where there is evidence of unreliability, however, information contained in a Form I-213 cannot be presumed true. *Hernandez-Guadarrama*, 394 F.3d at 680-81 & n.9. In an attempt to demonstrate the evidence presented through Officer Randall was unreliable, Vladimirov characterizes her testimony as "evasive, contradictory, and lacking in detail." Aplt. Opening Br. at 29. On the contrary, our review of the hearing transcript reveals Officer Randall's admission to being unable to independently remember an interview occurring more than four years previously, but nothing in her testimony suggested her observations, conclusions, or reports of statements made to her were not reliably recorded. "There is no indication that Officer [Randall's] [report] was carelessly or maliciously drafted or was intended to serve as anything other than an administrative record." *Barradas*, 582 F.3d at 763.

Vladimirov also argues the Form I-213 was unreliable because it reported the couple made statements that contained discrepancies when, in fact, there were no discrepancies. We have already rejected this argument. Vladimirov therefore has not rebutted the presumption of reliability, nor did he demonstrate any inaccuracy in the Form I-213, so the BIA appropriately considered it. *See Gutierrez-Berdin*, 618 F.3d

---

withdrew the I-130 petition for alien relative. Vladimirov did not testify or present other evidence concerning his statements.

14

at 653 (holding the IJ properly considered the Form I-213 "[s]ince petitioner did not demonstrate any inaccuracy in its contents").

Finally, we consider Vladimirov's contention that Bakhrakh was threatened and coerced to withdraw the I-130 petition for alien relative. According to Bakhrakh's testimony, Officer Gibson confronted her with Vladimirov's confession to having lied about the bona fides of the marriage. In addition, Officer Gibson informed her if she did not tell the truth about the marriage, she could be fined or jailed. Bakhrakh testified to thereby having felt coerced to withdraw the I-130 petition.[4]

BIA precedent requires the movant to establish the information sought to be excluded is erroneous, or the evidence was obtained by coercion or duress. *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (BIA 1988). If the movant meets this burden, the government will "assume the burden of justifying the manner in which it obtained the evidence." *Id.* Here, citing *Barcenas*, the BIA determined Vladimirov had failed to meet his burden, and we agree. Bakhrakh did not file a complaint against Officer Gibson or attempt to reinstate the I-130 petition, despite her serious allegation of coercion. Moreover, as the BIA observed, "informing someone of the legal

---

[4]    On appeal, Vladimirov asserts, without citation to the record, "Officer Gibson interrogated Ms. Bakhrakh in the presence of her abusive 27 year old [sic] son and permitted him to threaten and coerce her." Aplt. Opening Br. at 34. This assertion is not supported by the record. He also tells us Bakhrakh's attorney was not notified of the interview, but he has not provided any authority for a right to such notification. Consequently, we do not address these claims.

15

consequences of marriage fraud and perjury is not coercive." Admin. R. at 5 (citing 18 U.S.C. § 1001(a)(2) (whoever "makes any materially false, fictitious, or fraudulent statement or representation [in a matter before the government] shall be fined under this title [and/or] imprisoned not more than 5 years")).

## IV. CONCLUSION

For the reasons stated, the petition for review is denied.