**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EFREN MEDINA-MORENO,

Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

Respondent.

------------------------------

DISABILITY RIGHTS
INTERNATIONAL; PROFESSOR JUAN
E. MENDEZ,

Amici Curiae.

No. 19-9593
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

Efren Medina-Moreno (Medina) petitions for review of the Board of

Immigration Appeals' (BIA or Board) dismissal of his appeal of the Immigration

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Judge's (IJ) denial of his request for deferral of removal under the Convention Against Torture (CAT). We deny the petition.

## I. Background

Medina is a native and citizen of Mexico. He was admitted to the United States as a lawful permanent resident and spouse of a United States citizen in 1970. In 1992, he was convicted in Colorado state court of attempted first-degree murder, second-degree assault, and kidnapping. After serving his prison sentence, he was released to the custody of the Department of Homeland Security (DHS), which initiated removal proceedings based on his criminal convictions. After an IJ sustained the charge of removability, Medina filed applications for asylum, withholding of removal, and protection under the CAT. His application for deferral of removal under the CAT is the only one he pursues in his petition for review, so we limit our discussion to issues relevant to that application.

Medina has been diagnosed with a generalized anxiety disorder, a neurocognitive disorder that affects his memory and cognitive abilities, and various physical ailments. He appeared pro se for a hearing on his asylum application but the presiding IJ found him incompetent to represent himself and appointed a qualified representative to safeguard his due process rights. Later, at the hearing on his deferral application, the IJ adopted all but one of the safeguards the qualified representative proposed. The one she rejected would have required her to accord "great weight" to expert testimony and country-conditions evidence, Admin. R., Vol.

2 at 614, and in rejecting it the IJ said she would accord the evidence "appropriate weight," *id.* at 615.

Medina's argument in support of his deferral application had three key components. First, he claimed he will not have access to the mental-health treatment and family support he needs in Mexico and will therefore likely be placed in a Mexican psychiatric institution if removed. Second, he maintained that the conditions he would face if institutionalized would be so severe as to constitute torture. And third, he maintained that the Mexican government acquiesces to the abuses of patients in public mental-health facilities, so would acquiesce to his torture.

At the merits hearing, Medina testified about his cognitive and physical conditions, the challenges they present, and his treatment and care needs. He and his sister both testified that his family cannot afford to pay for a home and live-in assistance for him in Mexico. Medina also presented evidence from two expert witnesses. One, a licensed clinical psychologist, testified and provided a report describing the nature and scope of Medina's neurocognitive disorder. The second, a country-conditions expert, submitted a declaration stating that, based on the psychologist's evaluation and description of Medina's symptoms, he would likely be institutionalized in Mexico. The declaration and supporting documentation described the treatment of individuals with mental disabilities in Mexico and the circumstances he believed Medina would face if institutionalized. Medina also submitted

documentary evidence regarding the Mexican government's failure to correct the deplorable conditions in public psychiatric facilities.

## A.    IJ Decision

In ruling on Medina's deferral application, the IJ focused primarily on the first component of his argument:  the likelihood of his being institutionalized if returned to Mexico.  The IJ found Medina credible and acknowledged the seriousness of his conditions and the decline in his ability to function.  She also recognized that his "journey in managing his mental and physical illnesses will be a difficult one in Mexico."  Admin. R., Vol. 2 at 505.  But she found he had "not demonstrated that it is more likely than not that he will be unable to treat his mental illness in Mexico or that he will outwardly manifest his illnesses in a manner" that will "more likely than not result in his institutionalization."  *Id.* at 506.

In support of that conclusion, the IJ noted that although Medina and the psychologist testified that he will not have access to the medication he needs to treat his mental illness and physical ailments, the record did not indicate what medications he was taking or establish "that he would more likely than not lose access to the care and medication . . . crucial to the management of his condition."  *Id.* at 505.  The IJ found that Medina's thirteen siblings have "supported him unwaveringly" and "assist[ed] him financially, emotionally, and physically in the United States," and she was "unpersuaded" by the notion that they would be unable to provide assistance to him in Mexico.  *Id.* at 506.  The IJ also found the evidence insufficient to support the psychologist's conclusion that there are no community-based services in Mexico for

4

people with Medina's conditions, explaining that while "the quality of care [in Mexico] may be inferior or more expensive to that of the United States, inferior care does not equate to a complete loss of care." *Id.* at 505. Finally, the IJ acknowledged the country-conditions expert's opinion that Medina will likely be institutionalized, but discounted it because the expert did not support his "general conclusion" with a discussion of "how [Medina's] specific symptoms or illnesses more likely than not subject him to institutionalization in Mexico." *Id.*

Turning to the second and third components of Medina's argument for deferral, the IJ found that he failed to prove that if institutionalized in a Mexican mental-health facility, he will more likely than not be tortured with the acquiescence of the Mexican government. The IJ recognized that "there certainly may be abuse and mistreatment that occurs in state-run mental institutions in Mexico." *Id.* at 506. But she found that Medina failed to show "the Mexican government is aware of this issue and chooses to ignore it." *Id.*

The IJ indicated that in reaching these conclusions she gave "thorough consideration to all evidence submitted," *id.* at 501, but she gave diminished weight to some of Medina's evidence. Specifically, she found the psychologist credible but gave her testimony diminished weight because her conclusions were based on an incomplete medical history and treatment record, noting in particular that she "did not receive or review any documentation of [Medina's] mental health or medical treatment for the past twenty-six years, [while he] was detained in state custody." *Id.* The IJ also gave diminished weight to the country-conditions expert's declaration

5

about the likelihood of Medina's institutionalization, principally because of his "limited review of information regarding [Medina's] case" and his failure to "meet or speak with [Medina] prior to drafting the declaration." *Id.*

### B. BIA Decision

The Board affirmed the IJ's determination that Medina failed to demonstrate his entitlement to deferral of removal under the CAT. The Board recognized the "seriousness of [Medina's] conditions," but agreed with the IJ's finding that he did not prove "his symptoms and their manifestations would more likely than not" lead to his institutionalization in Mexico. *Id.*, Vol. 1 at 5. The Board also agreed with the IJ's determination that Medina failed to prove that any mistreatment he might suffer in a public mental-health facility would constitute torture with the acquiescence of the Mexican government. *Id.* at 6.

In reaching those conclusions, the BIA rejected Medina's contention that the IJ erred by refusing his proposed safeguard to accord great weight to expert testimony and country-conditions evidence, concluding that the IJ "implemented appropriate safeguards to ensure" the fairness of the proceedings. *Id.* at 4. The Board further found the IJ "gave sufficient reasons for the weight assigned" to each witness's testimony, noting that despite giving the experts' opinions diminished weight, the IJ relied on them in assessing Medina's claim. *Id.*

### II. Jurisdiction and Legal Standards

We have jurisdiction to review both factual and legal challenges to the Board's denial of relief under the CAT. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690-91 (2020)

6

(holding that 8 U.S.C. § 1252(a)(2)(C)'s prohibition on reviewing factual challenges to final orders of removal do not apply to CAT orders).[1]

Because a single member of the BIA issued the order affirming the IJ's decision, we review "both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009); *see also Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (explaining that when the BIA's decision provides "a condensed version" of the IJ's reasons for its decision, we may consult the IJ's "more complete discussion" to "give substance to the BIA's reasoning").

We decide questions of law de novo and review the Board's factual findings under the deferential substantial-evidence standard. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013); *see also Nasrallah*, 140 S. Ct. at 1692 ("Although a noncitizen may obtain judicial review of factual challenges to CAT orders, that review is highly deferential."). Under that standard, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We must affirm the agency's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (internal quotation marks omitted); *see also Htun v. Lynch*, 818 F.3d 1111, 1119 (10th Cir. 2016)

---

[1] Our unpublished decisions in *Medrano-Olivas v. Holder*, 590 F. App'x 770, 772 (10th Cir. 2014), and *Arce-Jimenez v. Holder*, 513 F. App'x 800, 802 (10th Cir. 2013), applying the jurisdictional bar to CAT orders were decided before the Supreme Court issued *Nasrallah*.

7

("[E]ven if we disagree with the BIA's conclusions, we will not reverse if they are supported by substantial evidence and are substantially reasonable." (brackets and internal quotation marks omitted)).

Aliens, like Medina, who are ineligible for withholding of removal under either the Immigration and Nationality Act or the CAT may still be eligible for deferral of removal under the CAT. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a). To establish eligibility for deferral, an alien must prove "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2). Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7). "[W]illful blindness suffices to prove acquiescence." *Cruz-Funez, v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (internal quotation marks omitted).

An applicant cannot establish eligibility for deferral by stringing together a series of suppositions to show he will more likely than not be tortured. Instead, he must prove each "step in th[e] hypothetical chain" of events between his removal and the torture he fears. *In re J-F-F-*, 23 I. & N. Dec. 912, 917-18 (A.G. 2006). Thus, to establish his entitlement to deferral of removal, Medina needed to prove each step in

8

his hypothetical chain of events: (1) that he will lose access to the medication and care he needs; (2) that his inability to manage his mental and physical condition will cause him to be institutionalized; (3) that if institutionalized, he will be tortured; and (4) that the Mexican government will acquiesce in his torture. *See id.* (An applicant must establish that every step "is more likely than not to happen" in order to prove that "the entire chain will come together to result in the probability of [his] torture.").

### III. Analysis

#### A. Likelihood of Institutionalization

Medina claims the Board applied the wrong legal standard and violated his right to due process in assessing the evidence about the likelihood of his being institutionalized. He also claims its determination that he failed to prove he will be institutionalized is not supported by substantial evidence.

We reject Medina's contention that the Board applied an "arbitrary and unfounded" legal standard, Pet'r's Opening Br. at 39, by requiring him to prove "his symptoms and their manifestations would more likely than not" lead to his institutionalization, Admin. R., Vol. 1 at 5. The Board properly held that Medina was required to present objective evidence specific to his circumstances supporting his claim. *See Karki*, 715 F.3d at 801 (explaining that aliens must prove their eligibility for asylum with objective, credible, and specific evidence). Contrary to Medina's assertion, the Board's finding that he failed to show his illness would manifest in a manner that would more likely than not result in his institutionalization does not amount to a finding that "he is not disabled *enough* to be institutionalized in

9

Mexico," Pet'r's Opening Br. at 33. The point of the Board's finding is that although Medina presented generalized evidence about his condition, the treatment of mentally ill people in Mexico, and the conditions in public health facilities there, he did not present sufficient evidence that his particular mental illnesses will result in his institutionalization. Medina's disagreement with the outcome of the Board's weighing of the evidence in this regard does not establish that its decision was based on the wrong legal standard.

We also reject his contention that the Board's handling of his experts' evidence violated his right to due process. The "fundamental requirement of due process" in CAT proceedings "is the opportunity to be heard at a meaningful time and in a meaningful manner." *Igiebor v. Barr*, No. 19-9579, 2020 WL 7134460, at *9 (10th Cir. Dec. 7, 2020) (internal quotation marks omitted). Medina was given a meaningful opportunity to present his case—the IJ accepted and considered all of his evidence, including his experts' testimony and declarations. His proposed due process "safeguard" that the IJ be required to give "great weight" to expert testimony and country-conditions evidence was nothing more than an attempt to strip the IJ of her discretion as the fact-finder to assess witness credibility and weigh the evidence, and the Board did not violate Medina's due process rights by concluding that the IJ properly rejected it. *See In re D-R-*, 25 I. & N. Dec. 445, 460 n.13 (BIA 2011) ("An Immigration Judge who finds an expert witness qualified to testify may give different weight to the testimony, depending on the extent of the expert's qualifications or

10

based on other issues regarding the relevance, reliability, and overall probative value of the testimony as to the specific facts in issue in the case.").

Nor are we persuaded by Medina's argument that the Board erred in concluding that his experts failed to present objective evidence establishing that he will likely be institutionalized. The psychologist described Medina's conditions, and the country-conditions expert described the treatment of people with mental illnesses in Mexico and the conditions in public health facilities there, but the Board found that neither adequately explained why Medina's particular circumstances would result in his institutionalization. In that regard, the Board noted the psychologist's failure to conduct a thorough review of Medina's medical records and the country-conditions expert's limited review of information regarding Medina's case. Contrary to Medina's assertion, the Board's findings are not rooted in its application of the wrong legal standard. Rather, they are based on its weighing of the credibility, reliability, and probative value of the experts' evidence. Medina's disagreement with the Board's assessment does not establish that it legally erred.

Medina's contention that the Board erred by ignoring or failing to "engage with" certain aspects of his evidence, Pet'r's Opening Br. at 33, fares no better. The agency must consider "all evidence relevant to the possibility of future torture," including "information regarding conditions in the country of removal." § 1208.16(c)(3)(iv). But the fact that the Board did not explicitly discuss every piece of evidence Medina presented does not mean it failed to consider or "engage with" his evidence. *See Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995)

11

("[T]he BIA is not required to discuss every piece of evidence when it renders a decision. . . . [A]ll that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." (internal quotation marks omitted)).

At base, Medina's allegations boil down to an argument that the Board gave insufficient weight to his experts' evidence and that its conclusion that he failed to establish a likelihood of institutionalization is not supported by substantial evidence. But decisions about witness credibility and the relative weight of the evidence are within the fact-finder's discretion, and we will not disturb them on review unless "the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Vladimirov v. Lynch*, 805 F.3d 955, 960 (10th Cir. 2015) (internal quotation marks omitted). That is not the case here. Although Medina presented evidence that could support a different outcome, the record as a whole supports the Board's determination.

### B. Likelihood of Torture with the Acquiescence of the Mexican Government

Medina also claims the Board applied the wrong standard in concluding he failed to prove that, if removed, he will more likely than not be tortured with the acquiescence of the Mexican government. More specifically, he claims the Board erred by applying a "specific intent" standard for governmental acquiescence[2] instead

---

[2] *See, e.g.*, *In re J-R-G-P-*, 27 I. & N. Dec. 482, 486-87 (BIA 2018) (concluding that "appalling conditions" in Mexican prisons and mental-health facilities resulting from "neglect, lack of resources, or insufficient training" as

of our "willful blindness" standard.[3]  But because Medina failed to demonstrate a likelihood that he will be institutionalized, we need not address this or any of his other arguments challenging the Board's acquiescence determination.

## IV.    Conclusion

The petition for review is denied.  Medina's motion for leave to proceed on appeal without prepayment of filing fees is granted.

Entered for the Court

Michael R. Murphy
Circuit Judge

opposed to "a specific intent to inflict pain or suffering" did not constitute torture within the meaning of the CAT despite evidence that the "Mexican Government has failed to take action to improve impoverished conditions or correct abusive conduct," because the applicant did not show "a sufficient likelihood that Mexican health workers, with the acquiescence of a Government official, would have the specific intent to torture him").

[3] *See Cruz-Funez*, 406 F.3d at 1192 (explaining that government officials acquiesce to torture when they have actual knowledge of or turn a blind eye to torture); *see also Karki*, 715 F.3d at 807 (applying willful-blindness standard and rejecting government's argument for "an actual knowledge requirement").