**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 6, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DONG ZHANG,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 21-9605
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

Petitioner Dong Zhang is a native and citizen of China. An Immigration Judge

(IJ) denied his applications for asylum, restriction on removal,[1] and relief under the

United Nations Convention Against Torture (CAT) after finding his testimony not

credible. The Board of Immigration Appeals (BIA) dismissed his appeal, finding no

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Restriction on removal used to be called "withholding of removal." _Neri-Garcia v. Holder_, 696 F.3d 1003, 1006 n.1 (10th Cir. 2012) (internal quotation marks omitted).

clear error in the IJ's determinations that he was not a credible witness and that his corroborating evidence was insufficient to establish his entitlement to relief. Mr. Zhang now seeks review of the BIA's order. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## BACKGROUND

Mr. Zhang entered the United States in 2008 on a temporary visa. The Department of Homeland Security (DHS) initiated removal proceedings, charging him as removable for overstaying the visa. He conceded removability and sought asylum, restriction, and CAT protection on the ground that he fled China to escape persecution based on his Christian faith and would be persecuted and tortured if he returned.

### 1. Testimony and Documents

Mr. Zhang testified that he started attending church after an incident in August or September 2006, when he was working at a state-owned hotel and its leadership had him beaten after he reported theft by hotel executives. The church he attended was a house church and the location changed weekly. Although he initially testified that he started attending church in December 2006 he later said he first attended in April 2006.

Mr. Zhang described an incident in August 2008 when he was hosting a house church session in his home. Police raided the home and arrested the attendees for participating in an illegal meeting. He was taken to a police station where he was interrogated and beaten, then detained for five days. He was released after he signed a "repentance statement" and paid a fine. R., vol. 1 at 160. His release was conditioned on his reporting to the police station weekly and not attending "illegal church." *Id.* at 160-

2

Police told his neighbors to monitor him. Mr. Zhang fled China two months later and came to the United States. His parents told him not to return to China because the police would find him and say that he fled China because he committed a crime.

Mr. Zhang lived in central California for a few months beginning in October 2008, then in the Los Angeles area (Monterey Park) for seven or eight months. He moved to Colorado Springs, Colorado, but could not remember when. He lived there for about ten months and did not attend church there. He moved back to Monterey Park, but could not remember how long he stayed.

Mr. Zhang said that when he lived in Monterey Park he attended "Methodist Christian Church." *Id.* at 166-67, 189. He initially testified that he attended that church from 2009 to 2010, but later said he attended from 2008 to 2009. When questioned about the discrepancy, he said it had "been a while" and he could not remember. *Id.* at 189. The documentary evidence indicated that he started attending that church in January 2009. Mr. Zhang said he attended the church often enough that he would remember details such as its name. However, the documents he submitted in support of his application identify the name of the church as "Christ Lutheran Church," not Methodist Christian Church. *Id.* at 274; *id.*, vol. 2 at 447.

After his second stint in Monterey Park, Mr. Zhang moved back to Colorado and started attending "Boulder City Church" in January 2013. *Id.*, vol. 1 at 168. When asked where the church was located, the IJ permitted him to refer to a document he had with him for the address of the church. The IJ noted that the court would take Mr. Zhang's need to refresh his recollection "into consideration in assessing the extent to which he can

3

testify without aid of documents." *Id.* at 171. After reviewing the document, Mr. Zhang

testified that the name of the church was "Boulder Chinese Christian Church." *Id.* at 173.

At the end of the hearing, the IJ noted "significant discrepancies" between his

testimony and his written application regarding his addresses and places of employment

in the United States, *id.* at 217, including that the application did not indicate that he had

lived in Colorado Springs. Over DHS's objection, the IJ continued the proceedings to

give Mr. Zhang an opportunity to provide corrected information and documentation

establishing his addresses and employers. The IJ noted that the court had no "evidence of

his claimed current involvement with the church here in Colorado," and ordered him to

provide "documentary evidence to substantiate his claims that he is currently practicing

any religious activity." *Id.* at 220. She ordered that the author of any letter submitted to

substantiate his religious activities be available to testify at the continued hearing so DHS

would have an opportunity for cross-examination.

Mr. Zhang submitted an updated application and a letter, purportedly from the

pastor of his church. The letter states that Mr. Zhang started to attend "Boulder Chinese

Evangelical Free Church" in January 2013. *Id.* at 248. When the hearing resumed before

a different IJ, Mr. Zhang's counsel acknowledged the IJ's order that the letter's author be

available to testify, but said the pastor was not present because appearing at immigration

court proceedings was against church policy.

**2. The IJ's Decision**

The IJ denied Mr. Zhang's application after finding him not credible and concluding that his corroborating evidence was either not reliable or insufficient to independently carry his burden of proof to establish eligibility for relief.

The IJ explained that because his application was based on his claim that he is a Christian fleeing religious persecution in China, "his continued involvement in and practice of Christianity after his arrival in the United States is an important aspect of his claim." *Id.* at 84. But she found that Mr. Zhang's evidence that he "continues to be a practicing Christian" "contains glaring inconsistencies." *Id.* In particular, his testimony that the church was called "Methodist Christian Church" conflicted with the letters he submitted, which referred to the church as "Christ Lutheran Church," and his testimony about the dates he attended that church was inconsistent—he initially testified that he started attending church the month he arrived in Monterey Park (October 2008), but later testified that he started attending that church sometime in 2009. *Id.*

The IJ identified similar inconsistencies in Mr. Zhang's testimony about the name and denomination of the church he attended in Colorado and discrepancies between that testimony and the pastor's letter, which reflected a different name and denomination. She also noted that Mr. Zhang had to refer to documents to refresh his recollection about the location of the church. Further, the IJ explained that she afforded the pastor's letter minimal evidentiary weight because (1) despite the previous IJ's order, the pastor did not testify when the hearing resumed, so DHS did not have an opportunity to cross-examine him; and (2) the letter was not written on church letterhead and did not provide a sworn

5

statement from its author, so the court was unable to assess its authenticity. And the IJ observed that although the court gave Mr. Zhang an opportunity to "provide . . . additional evidence documenting his continued involvement in the Christian religion," the only additional evidence he submitted was the unauthenticated letter. *Id.* at 85.

In addition to concerns regarding the evidence about Mr. Zhang's religious activities, the IJ identified other aspects of his evidence that undermined his credibility. She described his testimony about his places of residence and employment as "very unclear," noting that he was "unsure about the specific or even general dates of when he lived where," and that after the court ordered him to update his application, the information he provided did not account for his whereabouts from May 2009 to March 2010 and from October 2010 to December 2011, and his employment history had "similar gaps in time." *Id.*

The IJ also found discrepancies in the record concerning Mr. Zhang's account of events in China, including inconsistencies in his testimony about when he started attending church—at one point he testified that he started attending church after he was beaten by his employer in September 2006, but later testified that he attended church for the first time in April 2006, months before the beating. Finally, the IJ noted that he did not mention the beating in his written application.

### 3. The BIA's Decision

The BIA affirmed the IJ's decision, finding no clear error in her adverse credibility determination. It discussed the "numerous . . . specific, cogent inconsistencies and omissions" the IJ identified in support of her credibility finding,

6

*id.* at 4, focusing primarily on:  (1) the inconsistencies in Mr. Zhang's testimony about when he started attending church in China; (2) his failure to mention the beating by his employer in his written application; (3) the inconsistencies in his testimony and the discrepancies between his testimony and the documentary evidence about the names and denominations of the churches he attended in the United States and his dates of attendance; and (4) the inconsistencies and gaps in his testimony and application regarding his places of residence and employment.

In addition to upholding the IJ's adverse credibility determination, the BIA agreed with the IJ that Mr. Zhang's corroborating evidence was insufficient to independently establish his eligibility for relief.  In particular, the BIA concluded the IJ did not err in affording minimal weight to the letters Mr. Zhang submitted from the churches he attended in the United States, and it held that the IJ reasonably ordered that the author of any letter submitted to substantiate his current religious involvement be available to testify at the hearing.

Having concluded that the IJ's adverse credibility determination was not clearly erroneous and that his corroborating evidence was insufficient, the BIA held that the IJ properly denied Mr. Zhang's applications because without credible testimony, he could not establish his eligibility for asylum, restriction on removal, or CAT protection.

## DISCUSSION

The BIA reviews an IJ's credibility findings "for clear error, and only clear error." *Kabba v. Mukasey*, 530 F.3d 1239, 1244 (10th Cir. 2008).  It may not substitute its judgment for the IJ's because when "there are two permissible views of the evidence . . .

the factfinder's choice between them cannot be clearly erroneous." *Id.* at 1245-46

(internal quotation marks omitted). When the BIA's application of the clear error

standard amounts to a factual determination, we review its decision under the deferential

substantial-evidence standard. *Id.* at 1244.

Under that standard, "our duty is to guarantee that factual determinations are

supported by reasonable, substantial and probative evidence considering the record as a

whole." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). We ensure that the IJ

gave "specific, cogent reasons for disbelieving [the petitioner's] testimony," *id.* (internal

quotation marks omitted), and does not base an implausibility finding on "speculation,

conjecture, or unsupported personal opinion," *id.* at 1153. But we do not reweigh the

evidence. *Vladimirov v. Lynch*, 805 F.3d 955, 960 (10th Cir. 2015). And we do not

"question credibility findings that are substantially reasonable." *Ismaiel v. Mukasey*,

516 F.3d 1198, 1205 (10th Cir. 2008) (internal quotation marks omitted). The agency's

factual findings "are conclusive unless any reasonable adjudicator would be compelled to

conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Htun v. Lynch*, 818 F.3d 1111,

1119 (10th Cir. 2016).

### 1. Adverse Credibility Determination

Mr. Zhang raises several challenges to the BIA's finding that the IJ's adverse

credibility determination was not clearly erroneous.

First, he claims the BIA erred by discrediting his testimony about his religious

activities in the United States. He acknowledges that his testimony about the names and

denominations of the churches he attended was inconsistent, both internally and with the

8

documentary evidence, but he maintains that the inconsistencies "are relatively minor and have very little to do with his actual asylum clam" because they "concern[] matters in the United States." Pet'r's Br. at 20. The BIA concluded, and we agree, that the extent of his religious involvement in the United States was relevant to each of his claims for relief. Specifically, to establish his eligibility for asylum, he had to "show both a genuine, subjective fear of persecution" based on his Christian faith "and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Yan v. Gonzales*, 438 F.3d 1249, 1251 (10th Cir. 2006) (internal quotation marks omitted). To qualify for restriction on removal, he had to "show a clear probability" of religious persecution in China. *Id.* (internal quotation marks omitted). And to qualify for CAT protection, he needed to show that he would be tortured based on his religious beliefs if he returned to China. *See id.* Accordingly, the BIA properly considered the extent of Mr. Zhang's religious activities in this country, and we cannot say that any reasonable adjudicator would be compelled to reach a different conclusion about the credibility of his testimony on that subject.[2]

---

[2] We find no error in the BIA's determination that the IJ properly afforded limited weight to the letters Mr. Zhang submitted from the churches he attended in the United States. They contradicted aspects of his testimony, and despite the IJ's order, the pastor who wrote the letter about Mr. Zhang's attendance at the church in Colorado did not appear at the hearing, so DHS did not have an opportunity to cross-examine him. *See Matter of D-R-*, 25 I. & N. Dec. 445, 458 (B.I.A. 2011) (explaining that IJs have "broad discretion to accept a document as authentic or not based on the particular factual showing presented" (internal quotation marks omitted)).

We also reject Mr. Zhang's contention that the BIA's reliance on inconsistencies in his evidence about the denomination of the churches he attended amounted to improperly questioning his doctrinal knowledge of Christianity. In *Yan*, we were critical of the IJ's focus on the petitioner's "formal, doctrinal knowledge of Christianity," explaining that "a detailed knowledge of Christian doctrine may be irrelevant to the sincerity of an applicant's belief." *Id.* at 1255. But the inconsistencies the BIA relied on here were about Mr. Zhang's knowledge of the location, denomination, and names of churches he attended and when he attended them—factors that the agency reasonably concluded shed light on the extent of his participation in Christian activities and the overall strength of his religious persecution claim. This is a far cry from the "mini-catechism" on religious doctrine at issue in *Yan*. *Id.*

Next, Mr. Zhang takes issue with the BIA's reliance on inconsistencies in his testimony about his residences and places of employment in the United States. He argues that the BIA should have overlooked those inconsistencies because they stem from his having moved and changed jobs frequently and forgotten the details over time. This argument essentially ask us to reweigh the evidence, which we cannot do. *See Vladimirov*, 805 F.3d at 960. And we cannot say that any reasonable adjudicator would have disregarded the discrepancies and gaps in his timeline, particularly since the court gave him an opportunity to supplement the residence and employment history in his application and he failed to do so. We are not persuaded otherwise by Mr. Zhang's argument that "where he has lived at certain times in the United States has nothing to do

with his asylum claim," Pet'r's Br. at 25, because an adverse credibility determination may be based on any inconsistencies in the applicant's testimony, regardless of whether they go "to the heart of [his] claim," 8 U.S.C. § 1158(b)(1)(B)(iii).

Finally, Mr. Zhang argues that the BIA erred by discrediting his testimony about events in China—specifically, about the beating by his employer and when he started attending church there.  Contrary to his contention, the BIA did not err by relying on his failure to mention the beating in his written application—omissions on an application can form the basis of an adverse credibility determination.  *See Ismaiel*, 516 F.3d at 1205-06. And while he maintains that the reference in the application to his employer having retaliated against him for trying to "protect [his] basic rights" "indirectly alluded" to the beating, Pet'r's Br. at 32, the BIA was not required to make that inference.  *See Matter of D-R-*, 25 I. & N. Dec. 445, 455 (B.I.A. 2011) (a fact-finder "is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record").  With respect to the inconsistencies in his testimony about when he started attending church in China, the BIA acknowledged that he "was not explicitly questioned about" that issue so did not have an opportunity to clarify his testimony.[3]  R., vol. 1 at 4.  But it concluded that even disregarding that inconsistency,

---

[3] We note that "[a]n applicant may be put on notice of inconsistencies in different ways, depending on the circumstances." *Matter of Y-I-M-*, 27 I. & N. Dec. 724, 727 (B.I.A. 2019).  Explicit questioning is not necessary when an inconsistency is "obvious or apparent." *Id.*  In such cases, the adjudicator may assume that the applicant and his counsel "are aware of the inconsistencies, and it is the applicant's responsibility to proffer, with or without prompting, an explanation for what appears on its face to be a clear contradiction." *Id.* at 727-28 (brackets and internal quotation marks omitted).

the other issues the IJ identified supported the adverse credibility determination.  Again, we cannot say that any reasonable adjudicator would be compelled to conclude otherwise.

The common theme in all of Mr. Zhang's attacks on the agency's credibility determination is his argument that the inconsistencies in his testimony were the result of his fading memory over time, nervousness about testifying, and confusion in a stressful situation.  These explanations boil down to an argument that the BIA gave too much weight to the inconsistencies it identified and too little weight to other aspects of his testimony that he thinks are more important.  But again, decisions about the relative weight of the evidence are within the fact-finder's discretion, and we will not disturb them unless any reasonable adjudicator would be compelled to reach a different conclusion.  That is not the case here.  Considering the record as a whole, the BIA's decision is supported by substantial evidence.

## 2.  Eligibility for Relief

Mr. Zhang next argues the IJ and BIA erred by denying his claims for relief because he established his entitlement to relief by showing a well-founded fear of persecution (asylum), a likelihood of persecution (restriction on removal), and a likelihood of torture (CAT), if he returns to China.  But these arguments ignore that the IJ concluded Mr. Zhang had failed to meet his burden to establish eligibility for asylum, restriction, and CAT relief because he had not testified credibly and had not submitted

other evidence that could independently meet his burden.[4]  And the BIA upheld the IJ's adverse credibility determination.  If the agency determines that an applicant's testimony is not credible, it may deny relief on that basis alone.  *See Matter of M-S-*, 21 I. & N. Dec. 125, 129 (B.I.A. 1995) ("A persecution claim which lacks veracity cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum and withholding relief."); *Ismaiel*, 516 F.3d at 1206 (holding that an adverse credibility determination was sufficient to preclude a claim under CAT).  As discussed above, the BIA did not err in upholding the IJ's adverse credibility determination.  It thus did not err in upholding the IJ's conclusion that Mr. Zhang had not met his burden to establish eligibility for asylum, restriction on removal, and CAT relief.

## CONCLUSION

We deny the petition for review.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[4] Mr. Zhang does not challenge the IJ's conclusion, which the BIA upheld, that the other evidence he submitted did not independently meet his burden to establish entitlement to relief.  He has therefore waived any such challenge.  *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").